**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| QUINCE A. THOMPKINS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:13-cv-96 (MTT) |
| | : | |
| CAROLYN W. COLVIN, Commissioner | : | Social Security Appeal |
| of Social Security, | : | |
| Defendant. | : | |
| | : | |

## RECOMMENDATION

This is a review of the final decision of the Commissioner of Social Security denying Plaintiff Quince A. Thompkins' claim for period of disability and disability insurance benefits. Because the Commissioner's final decision is supported by substantial evidence and based on proper legal standards, it is hereby **RECOMMENDED** that the decision be **AFFIRMED**.

## BACKGROUND

At the time of the administrative hearing, Plaintiff was 55 years old. Plaintiff suffered from the severe impairments of diabetes, depression, and post-traumatic stress disorder and from the non-severe impairments of insomnia, pinguecula of the eyes bilaterally, hyperlipidemia, and hypertension. Prior to the alleged onset date of August 1, 2009, Plaintiff worked as a correctional officer. On August 12, 2010, Plaintiff applied for period of disability and disability insurance benefits. Plaintiff's application was denied initially and upon reconsideration. Following an administrative hearing on March 12, 2012, the Administrative Law Judge (ALJ) issued a written decision finding Plaintiff not disabled. The Appeals Council declined to review the ALJ's written decision. On March 19, 2013, Plaintiff filed the instant case.

## STANDARD OF REVIEW

Review of the Commissioner's decision is restricted to whether the decision "is supported by substantial evidence and based on proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. Under this limited standard of review, a reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004), quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Where substantial evidence supporting the ALJ's factual findings exists, reviewing courts cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's factual findings. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Even so, the failure to apply the correct legal standards or to provide a sufficient factual basis for the reviewing court to determine whether the correct legal standards have been applied is grounds for reversal. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of proving his disability. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

When analyzing the issue of disability, the Commissioner must follow a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520(a)(4)(i)-(v). First, the Commissioner

determines whether the claimant currently is engaging in substantial gainful activity. Second, the Commissioner considers the medical severity of the claimant's impairments. Third, the Commissioner considers whether the medical severity of the claimant's impairments meets or equals the severity of one or more of the specified impairments in the listing of impairments and meets the duration requirement.

The Commissioner next assesses the claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). Fourth, based on the RFC assessment, the Commissioner evaluates the claimant's ability to return to past relevant work despite the claimant's impairments. Fifth, the Commissioner determines whether there are a sufficient number of jobs in the national economy that the claimant can perform in light of his RFC, age, education, and work experience.

<u>DISCUSSION</u>

The Commissioner's decision must be affirmed because the determination that Plaintiff is not disabled is supported by substantial evidence and based on proper legal standards. Plaintiff argues that the Commissioner's decision is flawed for two reasons. First, Plaintiff contends that the ALJ improperly assessed the medical opinions of treating psychiatrist Dr. Barton and consulting psychologist Dr. Rose. Second, Plaintiff contends that the ALJ improperly evaluated Plaintiff's credibility. As discussed below, however, the ALJ not only properly assessed the medical opinions of Dr. Barton and Dr. Rose, but the ALJ also properly evaluated Plaintiff's credibility.

**ALJ's Findings**

At step one of the five-step sequential evaluation procedure, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1,

2009. AR 23. At step two, the ALJ concluded that Plaintiff suffered from the severe impairments of diabetes, depression, and post-traumatic stress disorder. Id. The ALJ also concluded that Plaintiff suffered from the non-severe impairments of insomnia, pinguecula of the eyes bilaterally, hyperlipidemia, and hypertension. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that either met or medically equaled one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). Id.

Consequently, before moving to step four, the ALJ considered Plaintiff's RFC. The ALJ determined that Plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R. § 404.1567(c) with certain exceptions. AR 26. That is, Plaintiff should be limited to occupations requiring no more than simple, routine, repetitive tasks not performed in a fast-paced production environment, involving only simple work-related instructions and decisions and relatively few workplace changes. Id. Plaintiff also should be limited to occupations requiring no more than occasional interaction with supervisors and coworkers as well as no interaction with members of the general public. Id.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 29. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff was able to perform based on his age, education, work experience, and RFC, including hand assembler, hand packager, and sorter. Id. at 30. Therefore, the ALJ determined that Plaintiff was not disabled. Id.

### Medical Opinions of Dr. Barton and Dr. Rose

According to Plaintiff, the ALJ improperly assessed the medical opinions of Dr. Barton and Dr. Rose. Doc. 11 at 10-15. More specifically, Plaintiff argues that the ALJ should have

assigned controlling weight to Dr. Barton's opinion as a treating psychiatrist and that the ALJ should have assigned less weight to Dr. Rose's opinion as a consulting psychologist. Id. Contrary to Plaintiff's first argument, review of the complete administrative record establishes that the ALJ properly evaluated the opinions of Dr. Barton and Dr. Rose.

Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). When determining what weight to assign an opinion, the ALJ should consider the following factors: (1) whether the source examined the claimant; (2) whether the source was a treating physician; (3) the length of the treatment relationship and the frequency of examination; (4) the nature and extent of the treatment relationship; (5) whether the source identified relevant evidence to support the opinion; (6) consistency with the complete record; (7) the specialization of the physician; and (8) other relevant factors. 20 C.F.R. § 404.1527(c). Even so, the ALJ should not attribute any special significance to an opinion that the claimant is disabled or that the claimant's impairments meet or equal any relevant listing because such an opinion is not a medical opinion. 20 C.F.R. § 404.1527(d). Instead, it is an opinion on an issue expressly reserved to the Commissioner. Id.

In this case, the ALJ properly evaluated and adequately explained the weight afforded to the medical opinion of Plaintiff's treating psychiatrist, Dr. Barton. Dr. Barton, a psychiatrist affiliated with River Edge Behavioral Health, periodically treated Plaintiff between September 10, 2010 and December 28, 2011. AR 284-371; AR 413-453; AR 455-503. According to Dr. Barton's medical records, Plaintiff chiefly complained about depression during his initial

examination, and Dr. Barton diagnosed Plaintiff with dysthymic disorder. AR 358-362. Dr. Barton repeatedly opined that Plaintiff's affect was normal and that Plaintiff's mood was congruent. AR 289; AR 293; AR 311; AR 359; AR 367; AR 468; AR 472; AR 476; AR 480; AR 488; AR 492; AR 496. Dr. Barton's records frequently noted that Plaintiff was not having any problems sleeping. AR 311; AR 358; AR 363; AR 366; AR 475; AR 488; AR 496. Even so, in a psychiatric impairment questionnaire dated August 24, 2011, Dr. Barton indicated that findings of "blunt, flat, or inappropriate affect" and "sleep disturbance," among other findings, supported his diagnosis of posttraumatic stress disorder and narcissistic personality disorder. AR 402-409. In the same psychiatric impairment questionnaire, Dr. Barton indicated that Plaintiff was "markedly limited" in his ability to complete a normal workweek without interruptions from his psychological symptoms and that Plaintiff likely would be absent from work "more than three times a month" because of his mental impairments. Id. After accurately describing Dr. Barton's opinion and the various findings in Dr. Barton's own medical records, the ALJ found that "the opinion of [Plaintiff's] treating physician, Dr. Barton, in that [Plaintiff] is markedly limited in the ability to complete a normal workweek without interruptions from psychologically based symptoms is given partial weight." AR 28. The ALJ further found that Dr. Barton's opinion "is not supported by the record as a whole." Id.

By assigning partial weight to Dr. Barton's medical opinion, the ALJ correctly evaluated Dr. Barton's opinion based on proper legal standards. Generally, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis, 125 F.3d at 1440. Even so, "good cause" exists to discount the opinion of a treating physician where the "(1) treating physician's opinion was not bolstered by the evidence;

(2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241.

Here, the ALJ clearly articulated why "good cause" existed to discount Dr. Barton's opinion, namely because Dr. Barton's opinion was not bolstered by the evidence in the complete administrative record. Id. In addition, "good cause" existed to discount Dr. Barton's opinion as set forth in the psychiatric impairment questionnaire because his opinion that the clinical findings of "blunt, flat, or inappropriate affect" and "sleep disturbance" supported his diagnosis of posttraumatic stress disorder and narcissistic personality disorder were inconsistent with Dr. Barton's own medical records. Id. The records do not provide any relevant evidence, including medical signs and laboratory findings, to support the opinion that Plaintiff was "markedly limited" in his ability to complete a normal workweek without interruptions. This aspect of Dr. Barton's opinion was not consistent with the record as a whole, which indicated that Plaintiff successfully worked for more than thirty years despite struggling with mental impairments until he chose to retire from the Georgia Department of Corrections. 20 C.F.R. § 404.1527(c). Because the ALJ's evaluation of Dr. Barton's medical opinion is supported by substantial evidence and based on proper legal standards, there is no basis to disturb this finding.

The ALJ also properly evaluated and adequately explained the weight afforded to the medical opinion of Plaintiff's examining psychologist, Dr. Rose. Dr. Rose, a consulting psychologist, examined Plaintiff for three hours on November 15, 2010. AR 263-266. Dr. Rose observed that Plaintiff manifested two distinct presentations during the examination, namely "a joking demeanor during testing" as well as "a more serious, querulous demonstration during the clinical interview." Id. at 265. Additionally, Dr. Rose found that Plaintiff "chose to provide a mixed level of valid effort across activities" and that Plaintiff's "testing behavior consisted of a

likely valid attempt for the three verbal comprehension subtests and contrived or unexpectedly low scores for everything else." Id. Dr. Rose opined that there was "clear evidence of intentional bias" on the Test of Memory Malingering and several portions of the Wechsler Adult Intelligence Scale and that Plaintiff's complaints of depression "could not be validated within the limits imposed by [Plaintiff's] obvious intentional bias during this assessment." Id. at 266. Based on the results of the examination, Dr. Rose diagnosed Plaintiff with "malingering," and Dr. Rose opined that Plaintiff could understand and follow simple instructions and would work best in non-stressful work environments with limited interaction with members of the general public. Id. After accurately describing Dr. Rose's opinion and his various findings, the ALJ found that "the opinion of Dr. Rose in that [Plaintiff] could understand and carry out simple work instructions and would work best in environments with no public contact is given great weight." AR 28. The ALJ further found that Dr. Rose's opinion "is consistent with the record as a whole." Id.

By assigning great weight to Dr. Rose's medical opinion, the ALJ correctly applied the proper legal standards. Review of the complete administrative record establishes that the ALJ adequately addressed not only the substance of Dr. Rose's medical opinion, but also all of the relevant evidence in the record before making a finding about Plaintiff's RFC. 20 C.F.R. § 404.1520(e). Further, Dr. Rose's opinion that Plaintiff could understand and follow simple instructions and would work best in non-stressful work environments with limited interaction with members of the general public is consistent with the other medical evidence of record, including, but not limited to, Dr. Barton's opinion in the psychiatric impairment questionnaire. AR 266; AR 405-406. Insofar as Plaintiff argues that the ALJ should have assigned less weight to Dr. Rose's opinion about Plaintiff's malingering or more weight to other aspects of Dr. Rose's opinion that Plaintiff views as more favorable to his claim, Plaintiff ignores "the narrowly

circumscribed nature" of judicial review in this case. <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1213 (11th Cir. 2005). A reviewing court is precluded from "'re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] [...] even if the evidence preponderates against' the decision." <u>Id</u>., quoting <u>Bloodsworth</u>, 703 F.2d at 1239. Because the ALJ's evaluation of Dr. Rose's medical opinion is supported by substantial evidence and based on proper legal standards, there is no basis to disturb this finding.

### Evaluation of Plaintiff's Credibility

According to Plaintiff, the ALJ also improperly evaluated Plaintiff's credibility. Doc. 11 at 15-19. More specifically, Plaintiff argues that the ALJ erred in making a boilerplate finding about Plaintiff's subjective complaints of pain and other symptoms against the ALJ's predetermined RFC assessment and that the ALJ erred in relying on conflicting statements made by Plaintiff about his sleep, retirement, and activities of daily living. <u>Id</u>. Contrary to Plaintiff's second argument, review of the complete administrative record establishes that the ALJ properly assessed Plaintiff's credibility.

Where, as here, Plaintiff testified about experiencing pain and other symptoms, the ALJ is responsible for considering all of Plaintiff's symptoms, including his subjective complaints of pain, and the extent to which Plaintiff's symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). In addition, 20 C.F.R. § 404.1529(a) provides in pertinent part that:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

To establish disability based on pain and other symptoms, Plaintiff must show: (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence confirming the severity of the alleged pain or, (b) an objectively determinable medical condition that reasonably can be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). When there is evidence that an impairment reasonably could be expected to produce the symptoms alleged by Plaintiff, the ALJ considers objective medical evidence and information from Plaintiff and his treating or examining physicians as well as other factors such as evidence of daily activities, medications, and other aggravating factors. 20 C.F.R. § 404.1529.

It is well-established that credibility determinations are left to the Commissioner, and not to the reviewing court. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). Regarding credibility, SSR 96-7P states that:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

That is, the ALJ must "clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks and citation omitted). While "[t]he credibility determination does not need to cite particular phrases or formulations," it must sufficiently indicate that the ALJ considered Plaintiff's medical condition as a whole. Id.

In this case, the ALJ specifically found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's]

statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." AR 27. The ALJ's written decision sufficiently indicates that the ALJ considered Plaintiff's medical condition as a whole before finding Plaintiff's testimony regarding his subjective complaints of pain and other symptoms to be partially credible. Review of the complete administrative record establishes that the ALJ thoroughly evaluated all of the relevant medical and other evidence concerning Plaintiff's statements about the intensity, persistence, and limiting effects of his pain and other symptoms. To the extent that Plaintiff argues that the ALJ's boilerplate credibility finding must be rejected pursuant to the Seventh Circuit's rationale in Bjornson v. Astrue, 671 F.3d 640, 645-646 (7th Cir. 2012), Plaintiff cites no case in which the Eleventh Circuit has adopted the rationale set forth by the Seventh Circuit in Bjornson, which is not binding authority on this Court. Further, the Seventh Circuit itself subsequently clarified that "[i]f the ALJ has otherwise explained his conclusions adequately, the inclusion of this language can be harmless." Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012). Thus, even under the Seventh Circuit's rationale in Bjornson, the ALJ's use of the boilerplate language identified by Plaintiff is not reversible error when it is accompanied by an adequate explanation of the ALJ's credibility findings.

The ALJ more than adequately explained his credibility findings here. As the ALJ correctly noted, for example, Plaintiff testified inconsistently about having problems sleeping at the administrative hearing. On the one hand, Plaintiff testified "I have a sleep problem where, you know, most of the time I'm up all night." AR 46. On the other hand, Plaintiff testified that he usually slept "about four to five hours" each night and that he could sleep up to twelve hours each night because "[o]nce I take that sleeping medicine and knock out, I knock out for a long time." AR 51; AR 58. The ALJ also correctly noted that Plaintiff reported spending time with his

girlfriend each day, going fishing four or five times each year, and going to restaurants two or three times each month, despite Plaintiff's testimony about his preference to avoid any social interactions with people "because I view them to be very troublesome to me in almost every regard." AR 46; AR 49; AR 54-55. Further, the ALJ properly found that Plaintiff testified that he "retired" from his position as a correctional officer and that his retirement benefits provided his current source of income. AR 42; AR 44-45. In fact, Plaintiff testified that he successfully worked as a correctional officer for more than thirty years even though Plaintiff simultaneously struggled with depression during this time. AR 40-41.

In sum, the ALJ's assessment of Plaintiff's credibility is consistent with all of the relevant evidence, and Plaintiff's arguments to the contrary must be rejected because they suggest that the Court should reweigh the evidence or supplant the credibility determination made by the Commissioner. Phillips, 357 F.3d at 1240 n. 8; Carnes, 936 F.2d at 1219. Because the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and based on proper legal standards, there is no basis to disturb this finding.

<u>CONCLUSION</u>

Because the determination that Plaintiff is not disabled is supported by substantial evidence and based on proper legal standards, it is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 10th day of July, 2014.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge